**Charles A. BARBARIN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 1595.**

United States District Court, E. D. Louisiana, New Orleans Division.

Jan. 28, 1971.

---

V. Gerald Dean, New Orleans, La., for petitioner.

George P. Hand, Jr., New Orleans, La., for respondent.

ALVIN B. RUBIN, District Judge:

In 1965, after a trial by jury in this district, Judge Robert A. Ainsworth presiding, Charles A. Barbarin was convicted of the sale of narcotics. He appealed and his conviction was affirmed. Barbarin v. United States, 5th Cir. 1968, 393 F.2d 110. Mr. Barbarin was represented by G. Wray Gill, whom he had retained.

On October 10, 1969, Mr. Barbarin filed a motion to vacate sentence under 28 U.S.C.A. Sec. 2255. He asserted a number of grounds, but only one indicated the necessity of an evidentiary hearing. That issue was whether a witness had testified at Barbarin's trial that he was not an informer when in fact he was, and whether, if so, the prosecution had knowingly permitted this untruthful testimony. The court appointed William S. Penick, Esq., as counsel to assist him. Mr. Penick applied himself diligently and ably to this task and attempted to assist the petitioner in every reasonable way. However, the petitioner was dissatisfied and asked that Mr. Penick be relieved. The court granted Barbarin's request. It then appointed Gerald Dean, Esq. Mr. Dean likewise represented Barbarin ably.

An evidentiary hearing was held. At this hearing, Mr. Barbarin was permitted to adduce evidence concerning any other grounds for relief he might wish

to present. Accordingly, this opinion will deal with all of the issues raised.

## I. THE TESTIMONY AT THE PRIOR TRIAL.

### A. George Walton's

█ One of the witnesses who testified against Mr. Barbarin at the prior trial was George Walton. At that time, Mr. Walton testified that he had purchased narcotics from Mr. Barbarin. This was an indispensable link in the proof against Mr. Barbarin for no one else was present when conversations leading to the alleged transaction happened, and only Mr. Willie Bray was allegedly present at other times in addition to Mr. Walton and Mr. Barbarin. Mr. Walton also testified that, at the time of the trial he was working for the government as an informer, but at the time he made this purchase, he was not a government informer. Mr. Barbarin contends that Mr. Walton was then in fact an informer and the government knowingly utilized this perjured testimony.

When Mr. Barbarin's petition was filed, Mr. Walton was confined in a New York State Prison. Correspondence was directed to him by counsel for Barbarin and he refused to answer any questions. The court then ordered written interrogatories under oath to be put to him. In answer to one of these, Mr. Walton answered that on April 16, 1964, "the date upon which Barbarin allegedly made the sale of narcotics," he was employed by the Federal Bureau of Narcotics as an informant. He said he was paid no salary.

When counsel for defendant attempted to subpoena Mr. Walton for the evidentiary hearing, he had been released from the New York Penitentiary. He could not be served with a subpoena and the information developed in an effort to serve him was that he had been released, placed on probation, had failed to observe the terms of his probation, and could not be located. Hence Walton did not testify at the hearing.

But Mr. Ronald Steadman, an agent of the Bureau of Narcotics, who developed the case against Mr. Barbarin, testified that Mr. Walton had not been an informer at the time of the events that resulted in Mr. Barbarin's conviction. Indeed, he testified that his office had attempted to make a case against Mr. Walton as well as against one Luke Augustine who had been an earlier subject of their efforts. Mr. Barbarin had not initially been the subject of their investigation, and it had not been intended to make a case against him or to make a purchase from him. With respect to Mr. Walton, he said it was standard office procedure not to make cases against individuals who were working as informants for the Bureau of Narcotics, as it would be fruitless to initiate a purchase of narcotics from an individual who you know will not be prosecuted because he is working as an informant for the Bureau of Narcotics. He later learned that the records of his office indicated that some other agent had paid Mr. Walton a reward as an informer a number of years before, but, on the occasion of the sale to Mr. Barbarin, the United States was using Mr. Bray as an informer to attempt to develop a case against Mr. Walton and Mr. Augustine, and was not using Mr. Walton as an informer at all.

At Mr. Barbarin's criminal trial, after Walton had testified, Barbarin's then counsel attempted to impeach his testimony. The Court of Appeals noted "in many respects (Mr. Barbarin) himself corroborated what transpired (with Mr. Walton) but denied the actual sale."

Mr. Steadman's testimony appears credible. Even if it be assumed that Mr. Walton, if available, would testify as he responded to the interrogatories, a preponderance of the evidence supports the conclusion that Mr. Walton was not an informer at the time he made his purchase from Mr. Barbarin. There is no evidence whatever that the U. S. Attorney or the agents who participated in the prior case had any knowledge that Mr. Walton was or had ever been an informer.

## B. Willie Bray

██ ██ Another witness at the prior trial, Mr. Willie Bray, is now confined in the Louisiana State Penitentiary. Mr. Bray testified at the prior trial that he was an informer, that he had been employed to make a case against Mr. Luke Augustine, but was unsuccessful in doing so. He met Mr. Walton by chance and Mr. Walton negotiated a sale from Mr. Barbarin. He was subjected to intensive cross examination. One of the questions asked him was: "Isn't it a fact that Willie Dupont was given a new trial because you framed him in 1953?" Mr. Bray denied this, and denied that he had ever testified against Willie Dupont. Mr. Bray repeated the denial at the present hearing. In fact the list of witnesses taken from the record of the Willie Dupont trial in Louisiana State court indicates that Mr. Bray did testify against him. But there is no proof whatever that the government knew that Mr. Bray testified untruthfully at Mr. Barbarin's trial. Indeed, it is evident from Mr. Bray's testimony that he has been a narcotics addict for some time and has informed against others on many occasions. His memory is obviously not entirely reliable.

The record of the prior criminal trial against Mr. Barbarin shows that an effort was made to impeach Mr. Bray's testimony, particularly his denial that he had testified against one Willie Dupont. The testimony of Mr. Matthew Braniff, an attorney at law, was tendered to attempt to prove that Mr. Bray had testified against Mr. Dupont, and it was rejected because it was not the best evidence.

Mr. Barbarin now is able to produce a transcript of the official list of witnesses in Mr. Dupont's trial to show that Mr. Bray is listed as a witness. The record of that trial is not available, and there is no evidence about what Mr. Bray testified. But, even if he did, the subject of his testimony was extensively explored at Mr. Barbarin's prior criminal trial. There is no reason why the evidence now adduced could not have been offered at Mr. Barbarin's earlier trial were it of major significance. There is no claim it is "newly discovered." Nor indeed does it indicate in any way that the government knowingly permitted him to commit perjury.

Finally, even if Mr. Bray's testimony on that account is discredited, it is likely that this would not have affected the verdict in the Barbarin case because Mr. Bray's testimony was only circumstantial. See Procunier v. Atchley, 1970, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524.

Only if it is established that a conviction was obtained by the use of false evidence known to be false when it was used may relief be granted. As set forth in Stein v. United States, 9 Cir. 1968, 390 F.2d 625:

> " * * * [T]he moving party [must show] * * * by a preponderance of the evidence that: (1) the testimony was perjured; and (2) the prosecuting officials knowingly and intentionally used such testimony to secure a conviction."

This has not been demonstrated and Mr. Barbarin's claim for relief on this basis must be rejected.

## II. THE CLAIMS THAT THE EVIDENCE WAS TAMPERED WITH AND THAT THE WITNESSES WERE INCONSISTENT

██ Mr. Walton has testified in the criminal trial that he bought seventeen capsules of heroin for $50 from Mr. Barbarin. Mr. Walton and Mr. Barbarin had testified that each used one of the capsules. Mr. Walton had testified that they used the heroin in a bar after the delivery had been completed. At the present hearing, Mr. Bray testified that they used the narcotics immediately to avert suspicion: if he, a known addict, didn't use some of the heroin immediately, he would be suspected of being a government agent. This is obviously in contradiction to his prior testimony.

But, wherever the heroin was used and for whatever reason the two addicts used it, it is a misapprehension to conclude that what they did constituted tampering with the evidence of such a nature as to justify setting aside the verdict. Agent Steadman did testify at the hearing that the proper procedure to be used by narcotic agents in cases in which informants are employed is to keep them under surveillance at all times and to witness the sale. An effort is made to account for the entire quantity purchased and to trace it from the alleged source step by step. It was impossible for him to do so in this case with respect to the two capsules consumed. But that doesn't invalidate the conviction. These were all facts for the jury at the prior trial to consider. They were all brought out at the prior trial.

■ In considering applications for post conviction relief, courts may exercise a sound judicial discretion to decline to re-try issues fully and finally litigated in the proceedings leading to the judgment of conviction and the direct appeal therefrom. Bearden v. United States, 5 Cir. 1968, 403 F.2d 782; Genio v. United States, 5 Cir. 1965, 352 F.2d 304; Porter v. United States, 5 Cir. 1962, 298 F.2d 461.

Like Mr. Walton, Mr. Bray was cross examined by Barbarin's counsel effectively and at length in the prior criminal trial. On direct examination, Mr. Bray had admitted two criminal convictions. On cross examination, it was brought out that he had other convictions, had used assumed names, had been a narcotics addict, and had purchased seventeen capsules of heroin from Mr. Barbarin but delivered only 15 to the narcotics agents, had kept one capsule for himself and one for Mr. Walton, knew Mr. Walton was an addict, and he was cross-examined at length about the Dupont case.

Mr. Walton testified that he assisted Mr. Bray by buying some heroin for him. He received $100 from Mr. Bray and used $50 of it to buy heroin from Barbarin and returned the remaining $50 to Mr. Bray. He didn't then know that Mr. Bray was an informer. He wasn't then an informer himself. He later became an informer to avoid prosecution growing out of his actions in this case. On cross examination it was brought out that in addition to the crimes he admitted on direct examination, he had been convicted of two prior crimes involving possession of marijuana, and in addition of burglary. The jury was well able to assess the credibility of Mr. Walton and of Mr. Bray.

The prisoner has had his day in court. He has litigated Mr. Walton's credibility and Mr. Bray's. He has offered no new evidence with respect to these matters. He is not entitled to another trial.

## III. OTHER ALLEGED INCONSISTENCIES AT THE EARLIER TRIAL

■ Counsel for Mr. Barbarin has diligently sought out every jot and title of doubt in the prior record. The indicated inconsistencies would not justify reversal even were this on appeal. They certainly do not, after appeal, justify relief under 28 U.S.C. Sec. 2255 for that statute applies only where a sentence "was imposed in violation of the Constitution or laws of the United States, * * * the court was without jurisdiction" to impose the sentence in question, or the sentence was in excess of the maximum authorized by law or is "otherwise subject to collateral attack."

The indicated inconsistencies include a host of miscellany: For example it is argued that Mr. Barbarin was arrested on a warrant charging that he sold narcotics to a government informant, while the indictment charges Mr. Barbarin with a sale to George Walton, who is claimed not to have been an informant.

Of course, the issue at the trial was whether the charges in the indictment (not those in the arrest warrant) were proved beyond reasonable doubt. A jury held they were. The Court of Appeals affirmed their verdict.

Other inconsistencies pointed to consist of minor discrepancies, of no evidentiary importance, between the testi-

mony of one witness and another at the prior criminal trial. It is evident that these amount at best to an attempt to retry the prior trial. The day for that has passed.

The record of the prior criminal case, together with the evidence at this hearing, conclusively show that the prisoner is entitled to no relief. The application is therefore denied.

However, the court wishes to express appreciation to V. Gerald Dean, Esq., and to William S. Penick, Esq., for their diligent and competent representation of the petitioner.